## Case No. 2,163.

### BURKE v. TREVITT.

[1 Mason, 96.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1816.

SEIZURE BY CUSTOMS OFFICER — JURISDICTION OF DISTRICT COURT TO COMPEL RESTITUTION—CUSTODIA LEGIS—LIABILITY OF CUSTOMS OFFICERS.

1. The district court, as a court of admiralty and maritime jurisdiction, may entertain suits for all torts, damages, and unlawful seizures at sea; and as a court of revenue, it may entertain suits for the trial of property seized for violations of municipal laws; and, as incident to this jurisdiction, may compel a redelivery of the property, and award damages for any loss of, or injury to it. It may compel a seizor to proceed to adjudication, in the same manner as it does a captor. After process served in proceedings in rem, the thing is deemed in the custody of the court, though in the actual possession of the collector, &c., under the act of 1799 [1 Stat. 678].

[Cited in The Phebe, Case No. 11,066; Re Metzger, Id. 9,511; Waring v. Clarke, 5 How. (46 U. S.) 486; Smith v. Averill, Case No. 13,007; Ex parte Fassett, 142 U. S. 479, 12 Sup. Ct. 298.]

[See U. S. v. Mooney, 11 Fed. 476; The Hollen, Case No. 6,608.]

2. The officers of the court, who have the custody of property seized, pending the suit, are responsible for any loss or injury sustained by want of due diligence. If an officer of the revenue seize goods without probable cause, he is responsible for all losses and injuries, however occasioned. If with probable cause, he is responsible only for losses and injuries occasioned by ordinary neglect.

[Explained in U. S. v. One Case of Silk, Case No. 15,925. Cited in U. S. v. Thomas, 15 Wall. (82 U. S.) 343; Averill v. Smith, 17 Wall. (84 U. S.) 93; McGuire v. Winslow, 26 Fed. 306.]

[Appeal from the district court of the United States for the district of Massachusetts.]

---

[1] [Reported by William P. Mason, Esq.]

In admiralty. This was a libel for restitution of goods, belonging to the plaintiff [John C. Burke], which were alleged to be seized by [defendant] Captain [Samuel R.] Trevitt, the commander of the revenue cutter, on board the schooner Urania, of which the plaintiff was mate, as forfeited by law, but against which no proceedings had been instituted on the revenue side of the district court. The defendant filed a defensive allegation, denying all the charges alleged in the libel, and asserting, that the schooner Urania and her cargo, after seizure, were duly brought into the port of Boston, without any loss or subtraction, and the vessel libelled in the district court, and duly taken possession of by the marshal of the district, and the defendant, and his servants, and keepers there, discharged from the possession and custody, as well of the said vessel as of her cargo. The libel was thereupon agreed to be amended, and the marshal was made a party to the suit, and he pleaded a defensive allegation, admitting that he had taken the possession and custody of the vessel, under a warrant from the court, but denying, that the said goods were ever in his custody or possession. [The district court dismissed the libel, and libellant appealed. Affirmed.]

Upon the hearing of the cause it appeared, that the Urania was, about the 18th of July, 1815, seized by Captain Trevitt, on the coast of the district of Maine, for a supposed breach of the revenue laws, and was, together with her cargo, brought to Boston for trial. The plaintiff was mate of the Urania, at the time of the seizure; and the goods in question, viz. four kegs of tobacco and four thousand cigars were his adventure. At the time of the seizure, the plaintiff asked for his adventure; and Captain Trevitt told him, if he would help work the vessel to Boston, he should have it. He accordingly came to Boston in the vessel, and remained on board until after the vessel was libelled. A suit was duly instituted, in the district court [case not reported], against the vessel only; and, when the marshal came to execute the process, he took possession of the vessel, put a ship-keeper on board, and ordered all the crew of the revenue cutter, then on board, to go ashore. The plaintiff then asked the marshal to deliver him his adventure, to which he replied, that he could not tell any thing about it. The cargo, not being libelled, was restored, and the vessel was, after trial, acquitted. At the time of the restoration of the cargo the tobacco could not be found; and there was evidence tending to show, that the vessel had been broken open in the night-time, and that the ship-keeper was, from his ill health, unable to bestow a proper degree of watchfulness over the ship, and also to prove, that the plaintiff had endeavoured to seduce a boy under the ship-keeper, to purloin some of the rigging and appurtenances of the

schooner while in his custody. There was no evidence, that the defendant refused to give up the plaintiff's adventure, after the arrival at Boston, or that he was even deprived of the custody of it; and the loss, if any, occurred after the vessel was taken possession of under the process of the district court.

Mr. Peabody, for appellant, argued, that as there could be no doubt, that the property was on board, the only question was, whether the appellant, in consequence of his negligence, had discharged all other persons from responsibility. That it being the duty of captors to libel immediately, and proceed to adjudication, the appellant could have nothing to do with the property, until such proceedings were had, and, therefore, could not be chargeable with negligence respecting it. What then was the degree of care, for the want of which, an officer in such a case was responsible?

STORY, Circuit Justice, observed, that he understood captors to be answerable for fair and reasonable diligence.

Mr. Peabody assented to this, and added, that had these goods been liable to seizure, then this doctrine would have applied; but that they never were liable to seizure. Had they been so, then the inquiry would remain, whether, under the circumstances, Trevitt was not liable for them, as not having kept them diligently. 5 C. Rob. Adm. (Eng. Ed.) 357.

Mr. Smith, on the other side, raised some question as to the jurisdiction of the district court in a case of this nature; and further contended, that the captain of the revenue cutter was only an agent of the collector, and that, therefore, the action should have been brought against the collector, if against any body. 1 Laws U. S. 236–240. That the marshal could not be liable, because he only took charge of the vessel and her appurtenances; and that if the property was ever in his possession, it was by accident alone, and he would be liable only for gross negligence. 2 Jones, Bailm. 32.

STORY, Circuit Justice. A doubt was thrown out at the argument, whether cases of this description were within the jurisdiction of the district court. The proceeding is, to be sure, of rare occurrence, because there has seldom been an occasion requiring its exercise; but it is difficult to conceive the ground of the doubt suggested at the bar. The district court as a court of admiralty and maritime jurisdiction, may entertain suits for all torts, damages, and unlawful seizures, committed upon the high seas, and other navigable waters, where the tide ebbs and flows. As a court of revenue, it has exclusive jurisdiction of all seizures made under laws of impost, navigation or trade of the United States, and may entertain suits for the condemnation or acquittal of the property so seized; and, as an inci-

dent to such jurisdiction, may compel a re-delivery of the property, or its value, into the possession of those, who may be ultimately entitled to it.[2] And it is quite immaterial, whether such a proceeding be enforced by way of original suit, or by a summary decretal order, in a cause already before the court. Cases are familiar, where the court proceeds by way of monition, to compel captors to proceed to adjudication of their prizes, and, on their refusal, enforces the rights of the claimant by a summary, or plenary proceeding, as the circumstances of the case may require. If the same process to compel a seizor to proceed to adjudication of property, seized for breaches of the municipal laws, is less familiar, it is not, that the court has entertained doubts of its authority; but that its interposition has not been sought. When property is seized, as forfeited under the revenue laws, it is the duty of the seizing officers immediately to institute the proper process to ascertain the forfeiture; and this duty is enforced by the eighty-ninth section of the collection act. Act 2d March, 1799, c. 128 [1 Stat. 695]. As soon as the process is commenced, the property is in the custody of the law; for it is a general rule in all proceedings in rem, that the custody of the thing in controversy belongs to the court, in which the suit is pending. Jennings v. Carson [Case No. 7,281]; Home v. Camden, 2 H. Bl. 533; The Maria and Vrow Johanna, 4 C. Rob. Adm. 348; Sir W. Scott's argument in Smart v. Wolff, 3 Term R. 329; The Rendsberg, 6 C. Rob. Adm. 142. The act of the 8th of May, 1792 [1 Stat. 275] c. 36, § 4, directed, that the marshal should have the custody of all vessels and goods seized by the revenue officers; but this provision was altered, as to goods, by the collection act of March 2d, 1799 [1 Stat. 678] c. 128, § 69, which declared, that all goods seized under that act, should be put into and remain in the custody of the collector or his agent. This act, however, does not change the legal custody, after process is served upon the property. It is still, in contemplation of law, in the custody of the court; and the collector remains as much responsible to the court for the property, and as much bound to obey its decrees and orders, as the marshal is, as to property confided to his care. The collector is in fact quoad hoc the mere official keeper for the court. See Smart v. Wolff, 3 Term R. 323. In respect to property in the custody of officers of the court, pending process, they are undoubtedly responsible for good faith and reasonable diligence. If the property be lost or injured by a negligent or dishonest execution of their trust, they are liable in damages; but they are not of course liable, because an em-

bezzlement or theft is proved. They must be affected with culpable negligence, or fraud, and such is the confidence the court places in its officers, that perhaps the proof of such negligence, or fraud, ought to be thrown upon the other party. The Hoop, 4 C. Rob. Adm. 145; The Rendsberg, 6 C. Rob. Adm. 142, 157, 169.

What degree of diligence may be properly required in public trusts of this nature, whether that diligence, which a prudent and discreet man uses about his own affairs, and the omission of which is deemed ordinary negligence; or whether responsibility only attaches to fraud or gross negligence, the dolus et negligentia dolo proxima[3] of the civil law, it is not necessary to determine; for it is perfectly clear from the whole evidence, that the marshal never claimed to have any custody of the goods in question. We may, therefore, dismiss all farther consideration of this case, so far as it respects the marshal.

As to seizures for breaches of municipal law, they are made by officers of the customs and others at their own peril. If made without probable cause, the seizor is responsible for all consequences; for the act is construed a tortious act; and his diligence in the preservation of the property is no protection against losses occasioned by superior force, or inevitable casualty. If made with probable cause, the seizor, at least by the laws of the United States (Act March 2, 1799 [1 Stat. 695] c. 128, § 89; Act February 24, 1807 [2 Stat. 422] c. 64), is entitled to the benefit of a bonae fidei possession, and is responsible only for ordinary diligence in the preservation of the property, and in bringing it in for adjudication.[4] In these respects, he stands upon the same footing with captors exerting the rights of prize. The rule, as to captors, is laid down by Sir William Scott, with equal brevity and precision: —"Captors are generally bound for two things, for safe and fair custody, and, if the property is lost, or destroyed, for want of that safe and fair custody, they are responsible for the loss. For these two things every

---

[2] The same point has been since recognised in Slocum v. Mayberry, 2 Wheat. [15 U. S.] 1. And see Gelston v. Hoyt, 3 Wheat. [16 U. S.] 302, etc.

[3] See The Rendsberg, 6 C. Rob. Adm. 142, 157, 169; Domat, Civ. Law, bk. 1, tit. 7, "Observations Preliminaires;" Pothier, Traite du Contrat de Depot, c. 4, art. 1, note 85 et seq.; Id. art. 2, note 91 et seq.

[4] Whether, independently of any statutable provision, an officer, seizing for a breach of municipal law, is, in case of an acquittal, protected from damages by probable cause, has not been settled in the courts of the United States. Is there any distinction, as to the cases of seizure on the high seas and on land? See, on this subject, Murray v. The Charming Betsy, 2 Cranch [6 U. S.] 64; Little v. Barreme, Id. 170; The Sally, 2 C. Rob. Adm. 224; Imlay v. Sands, 1 Caines, 566; The Maria and Vrow Johanna, 4 C. Rob. Adm. 348; Maley v. Shattuck, 3 Cranch [7 U. S.] 458; and the very recent case of Gelston v. Hoyt, 3 Wheat. [16 U. S.] 301, etc. But see The Apollon, 9 Wheat. [22 U. S.] 362; The Marianna Flora, 11 Wheat. [24 U. S.] 1; The Palmyra, 12 Wheat. [25 U. S.] 17.

captor is answerable; but if an accident or mere casualty happens, against which no fair exertion of human diligence could protect, it must fall on the party, to whom the property is ultimately adjudged." The Catherine and Anna, 4 C. Rob. Adm. 39. And, what that safe and fair custody is, the same eminent judge has stated to be, tnat the goods are to be kept with the same caution with which a prudent person would keep his own property. The Maria and Vrow Johanna, 4 C. Rob. Adm. 348; Jones, Bailm. 118.

If in the present case the loss had occurred by theft, while the property was in the possession of the seizing officer, a question of some nicety would have arisen. It is said, that by the general law of bailments, robbery by force is considered irresistible; but a loss by private stealth is presumptive evidence of ordinary neglect. Jones, Bailm. 44, note 18; Id. 76, 119. However this may be, it is certain that the presumption may be removed by proof of due diligence. Id. 66. And in the admiralty a captor is not held responsible for theft, unless there lies against him the imputation of personal negligence. The Maria and Vrow Johanna, 4 C. Rob. Adm. 348. And, at all events, the seizing officer is not responsible for a loss, happening to the goods, whilst they are under the custody of the law, and removed from his possession to that of the court. Id. 348. It is not necessary, however, to pursue these considerations farther; nor would they have been brought so far into discussion, if they had not affected the daily practice of the court. It is fit, that seizing officers, and the officers of the court, should constantly bear in mind the nature and extent of their duties, and the degree of responsibility and diligence, which the court requires at their hands. It is fit, also, that the public should know, that for every loss, occasioned by the misconduct or negligence of such officers, an adequate remedy will be administered by the court in the exercise of its ordinary jurisdiction.

Upon examining the particular circumstances of the present case, there does not seem any proper ground laid for the interposition of the court. It is not clearly shown, that the property of the plaintiff was ever seized for a forfeiture, or removed from his personal custody by the officers of the cutter. On the contrary, it is in evidence that he was told, that he should have it, when he arrived in Boston; and there is not the slightest proof, that it was ever out of his personal possession, or any control exercised over it by the revenue officers. There is great reason to suppose it was stolen, but stolen after the revenue officers had left the vessel, and the marshal had taken possession of her under a warrant of the court, without, however, claiming any right to the goods. The plaintiff has, probably, acted under a mistake; but it is a mistake, which ought not to be pressed to the injury of those, who were not parties to it.

The decree of the district court, dismissing the libel, must be affirmed; but, under the circumstances, without costs to either party.