The opinion of the court was delivered by
G-ibsON, J.
The argument is, that the existence of the plaintiffs51 execution in the hands of the high sheriff being unknown to the under sheriff when he arrested Wright on Hassan’s execution, and the arrest being at the same time unknown to the high sheriff, neither of them, separately, did the plaintiffs a wrong: so that although they have received injury somewhere, they are to have redress nowhere. There is, however, no rule more clearly laid down, hr more firmly established, than that a plaintiff who has delivered process to the sheriff to be executed, has nothing to do with the official misconduct or mismanagement of the under sheriff; and .that where, by the arrest of an under sheriff Or bailiff, the prisoner is in legal estimation in the custody, of the high sheriff, the latter is exclusively liable. There are, it is true, cases in the books of actions for escapes against bailiffs, wardens, and goalers; but it will be found, either that such absolute goalers are intended as writs are directed to, or that the bailiffs .or wardens, were officers of a franchise, and' had the execution of all process within its limits; or were in some way or other exclusively entitled to the custody of the party who escaped. But wherever the person who makes the arrest, is the deputy or servant of the sheriff, the custody and acts of the deputy, are the custody and acts of his principal. -It is an undoubted principle, that where there are two or more persons who-all constitute but one officer, as in London, and some other places in England, where there are two sheriffs, an arrest by the one, will, in case of an escape, render the other .liable, although he neither participated in, or had knowledge of the arrest; as seems to be agreed by Holt, C. J., in Taylor v. Clarke, 10 Vin. Escape, B, pl. 18. 3 Lev. 399. The only exception to this principle is to be found in Marsh v. Astray, Cro. Eliz. 175, where it was held, that if a writ be delivered to the under sheriff to summon a party and he neglect to return it, a.n action will lie againt him; for perhaps the sheriff had not notice of it. But this case seems not to be law. Compleat, Sheriff, 355-6: for it is agreed that the sheriff is the person in court to answer all actions for the torts and misdemeanours of the under sheriffs and their bailiffs. Laycock’s Case, Latch, 187. . For a voluntary escape, however, an action will lie agains.t a goaler, not as an officer, but as a wrongdoer, such an escape being in the nature of a rescue, Lane v. Colton, 1 Salk. 18, pl. 8. 10. Vin. Escape, B. pl. 19-20: but even there the sheriff also is liable as the officer; and where that is the case, I cannot *395 seé how he can avail himself of the misconduct of his deputy. In the case at bar, the arrest by the under sheriff was the arrest of the high sheriff, in whose, custody, to every legal intent, the prisoner as much was, as if he had been arrested by.the high sheriff in person, Frost’s Case, 5 Co. 89; and it is clear, that a prisoner in actual custody on one writ, is by operation of law, in custody on every other writ.lodged against him in the sheriff’s office; and if he escape,- the plaintiff may declare that he was arrested by virtue of such other writ. Frost’s Case, 5 Co. 89. Rolls. Abr. 94. Jackson v. Humphreys, Salk, 273, pl. 6. Why then should'the plaintiff be prejudiced by the nature of the relation between the sheriff and his deputy; or by the circumstance that the deputy had not both writs with him; or that he executed'the one on which the arrest was actually made, without its having first been delivered to the high sheriff, and without his knowledge, when the deputy by the letter of deputation, was authorized to execute process delivered to him by third person ? The sheriff and his deputy constitute one officer. Compleat, Sheriff, 43. It is true, however, that from its great antiquity and convenience; the office of under sheriff is recognized by the law, so far as to enable the person who fills it to execute* the ordinary duties of the high sheriff; yet he has no estate or interest in the office, nor can he do any thing in'his own name, but only in the name of the high sheriff, who is answerable for all his acts. Hob. 13. Salk. 96. Dalt. 3, The under sheriff is in fact, nothing else than a general bailiff over the whole county, and differs from a special bailiff only in this, that by the 1st and 2d P. & M. c. 12, the sheriff is bound to appoint a certain number of bailiffs to make replevins and perform certain other' duties in his name, but this provision of the statute is not in force here; whereas, he may either appoint an under sheriff, or execute the office in person. But the sheriff is the responsible head,’and if he consults his convenience, with respect to the course which his business is permitted to take, it is at his peril. If Hassan’s execution had been lodged in the office, or had been delivered to the under sheriff by the sheriff himself, instead of being delivered by Hasshn, it is not pretended that the sheriff would not have been liable. But actual ignorance of the one part of the transaction-by the sheriff, and of the other by his deputy, furnishes no excuse. It was the duty of the deputy before proceeding to the arrest, to ascertain whether other writs were lodged against the party, and'for negligence,' in this his principal is answerable: and it was also the duty of the principal to compel him to do so, or else to restrain him from executing any other process than what he himself should deliver to him, at least he was bound to take notice of every thing which ahy of his authorized agents did: so that the deputy and the principal were reciprocally guilty of negligence. An officer who is not bound to appoint a deputy and yet does so, cannot be permitted to say, that a fault, in the execution of the office was owing *396 in partj to want of knowledge in himself, and- in part to want of knowledge in his deputy: else it would be-easy for the officer and the deputy to shuffle the imputation of negligence from one to the other, till, as in this instance, it would, in'the end, rest nowhere. The only way in which the defendant could, in this instance, controvert his liability with any thing like a chance of success, would be by' insisting that the arrest /was entirely void, by reason of the writ-not having been lodged in his office. But the terms of his owri deputation are against that conclusion, the deputy being authorized to execute all writs which the high sheriff, or any person for Mm, should put into his hands. This must have been designed to sanction the universal practice of putting process directly into the hands of the under sheriff; but even ihe existence of such a practice with the knowledge and the assent of the. sheriff would amount to an authority. It will scarcely be pretended that Wright could have maintained trespass against the under sheriff, because the writ had not been in the sheriff’s office. Even taking the defendant, therefore, to be an innocent person, a loss suffered in consequence of his acts, ought to be borne by him, rather than by the plaintiff, a person equally innocent, whose acts did not contribute to it. But the case would be very different if it it should appear that* the plaintiff had put his execution into the office, knowing that ihe' first process had been delivered to the under sheriff, and with a view to fix the sheriff: that would be such a fraud as would preclude him in any event.
This may seem sharp doctrine towards sheriffs; but it is not more sharp than the law is in the case of an escape by reason of deficiency of the goal; or in the case of a rescue by rebels or insurgents, however overwhelming the force; although the sheriff would be excused for a rescue by foreign enemies, or for an escape in consequence of sudden fire; and in this respect the'custody of prisoners resembles that of goods bailed to a carrier, who is answerable for the loss of them, except where it happens by the act of God, or the common enemy. The strictness of the law in this respect, arises from public policy. The sheriff takes his office for better for worse; losses in particular instances, being compensated by extraordinary gains in others- At all events, it is better he should bear the risque of casual loss, than that the public should be left Unprotected.
At the trial, the plaintiffs offered evidence of certain declarations or admissions of the under sheriff, to their attorney, made after the return day of the writ, but before it was actually returned; which the court rejected, and-sealed a bill of exceptions. These admissions were made by the under sheriff in the course of the business of the office, and while the writ was in the sheriff’s hands, and were, therefore, clearly competent evidence; although not for the reason assignéd in Yabsley v. Doble, 1 Lord Raym. 190, that as the under sheriff had given security for the due performance of the of *397 fice, his declarations went to charge himself, he being answerable over, and the real party in interest. The declarations of an under sheriff, are evidence to charge the high sheriff only where his acts might be given in evidence to charge him; and then, rather as acts than as declarations; his declarations being considered as part of the res gesta. It is for this reason that his declarations to a stranger are not evidence against a sheriff.
Judgment reversed, and a venire de novo awarded.