Cowen, J.
The circuit judge put the case to the jury upon the sheriff’s return. Had the judge denied its force as evidence, the sheriff might have shown the exculpatory facts by proof aliunde. The return must therefore be regarded as evidence for the purposes of this motion, and as the only defensive evidence in the case,
The ground of defence is that, though sufficient goods were levied on, they were immediately (May 21st) delivered to a receiptor. That on the 31st there was an order served to stay the sheriff till the next August term, the goods in the mean *591 time (June 22d) being casually consumed by fire. The receipt mentioned the goods as seized ruider execution at the stiit of the plaintiffs, agreed on their Value at §2000, and stipulated to re-deliver them on demand or pay the value.
The property of the sheriff in goods seized by virtue of a fi. fa., is analogous in most points to that of an ordinary bailee of goods for the purpose of custody and sale. He is very nearly in the case of a factor del credere, the keeper and seller of goods with an obligation to guaranty the sale and a lien on the proceeds to secure his compensation. He also acts, like the factor, under a power which may be revoked or controlled by others having a paramount interest. The factor is generally held liable for ordinary diligence in his vocation. He is “ not liable for any losses by theft, robbery, jiro, or other Accident, unless it is connected with his own negligence.” (Story On Bailm. 296.) He is of cotirse warranted in delegating his trust, or such portion of it as the exigencies of business may requite, to his servants. In all these respects there is an obvious parallel between his rights and obligations and that of the sheriff. And looking upon the latte!, for the present, as holding the personal custody of the goods, or as having left them with servants whose interests were indifferent between the parties, I think the return must be considered as making out a complete defence. It says, the goods were casually destroyed by fire. It describes an accidental destruction, for which a factor would not be liable. If the retofn is to be taken as showing generally that they were destroyed, not saying casually, this would probably call for proof on the part of the plaintiff that there was some negligence in the sheriff or his delegate. The intendment is, that a bailee has done his duty till the Contrary has been shown. There are exceptions; but the general rule is as I have stated.
That a bailee of goods holds them in the capacity of a public officer, has never, that I am aware, been considered as fixing a more rigorous measure of liability upon him than if he were a private person. The contrary has been held in respect to several officers. One instance is that of receivers; (Knight v. Plymouth, 3 Atk. 480;) another that of a county treasurer; *592 (Supervisors of Albany Co. v. Dorr, 25 Wend. 440;) another that of a post-master; (Id. and the cases there cited.) So as to revenue officers. (Burke v. Trevitt, 1 Mason, 96, 101, 2, and the cases there cited.) The general liability of officers having the charge of property is put by Mr. Justice Story on the same footing as that of bailees for hire. (Story On Bailm. 96, § 130; Id. 390, § 620.) The- same doctrine was assumed as applicable to- sheriffs holding goods taken by attachment, in Jenner v. Joliffe, (6 John. 12.) Nor are the cases cited by the plaintiff’s counsel from the Massachusetts reports in any way incompatible with it.
It was supposed that a peculiar obligation arises from the seizure upon execution operating as a- satisfaction of the debt. But this effect must be taken with many qualifications. (Green v. Burke, 23 Wend. 496 to 502.) No case goes the length of saying that, if the goods be destroyed without any fault of the sheriff, the plaintiff shall not be entitled to sue out a new execution, or the sheriff to malee a new levy.
The principle of liability for escapes certainly admits of no excuse which would not exempt a common carrier. (Watson On Sheriffs, 140, 141, and the books there cited; Fairchild v. Case, 24 Wend. 383, and the books there cited; Dy. 66, b.) A rule so rigorous, like that which binds the carrier, probably found its way into the law upon grounds applicable to the particular case. In Green v. Hern, (2 Pennsylv. Rep. 170,) Gibson, Ch. J. said, the reason of the rule is precisely the same in both cases. He mentioned the difficulty of proving negligence in the first instance, with the danger of corruption and collusion. In Wheeler v. Hambright, (9 Serg. & Rawle, 396,) he had previously said that the strictness of the law arose from public policy, and then assigned some of the reasons which influence the case of the carrier. An additional argument arises from the sheriff’s power to raise the posse comitatus, and the fact that a public jail is provided for him. This will be seen by 1 Roll. Abr. Escape (D.) 807. He says that a rescous from an arrest on mesne process may excuse an escape, if made before the prisoner be carried to' jail, because the sheriff is not bound to carry the posse with *593 him; though otherwise if the arrest were on a ca. sa. after the prisoner reaches the jail. ' He puts the increased responsibility-on an obligation “ to conserve his jail at his peril.” It is true he may, if he think proper, call in the posse to aid in preserving goods. (Dalt. Shff. 104, ch. 21; id. 354, ch, 95; 2 R. S. 359, 2d ed.) But the call has reference to actual or apprehended resistance; (Id. id.;) not to casual losses. It is doubtful whether the sheriff can command the gratuitous service of citizens for the mere purpose of guarding against ordinary accidents. We know this is never thought of, especially in the case of seizing and taking care of goods. Independently, therefore, of the security taken by the sheriff from one who receipts the goods for the benefit of the debtor, I have been unable to perceive that the obligation in question transcends that of any other bailee for hire.
My opinion is, however, that a very different consideration arises out of a receipt given by the debtor’s friend, with the understanding that the debtor is to have the custody till a sale. This is, to be sure, the ordinary course. It is perfectly lawful ; but the goods are then no longer in impartial hands. They are with a man whose interest it is to secrete them for his own use, and whose feelings are perhaps embittered by the litigation which has resulted in the seizure. In short, he is not a safe delegate with whom to entrust the goods for safe keeping either against eloignment or destruction. His interest and feelings may lead him to promote the one or the other. I am of opinion, therefore, it Avould be an act of misfeasance in the sheriff to leave the goods in his custody without taking security for something more than he would be bound to exact from his deputy or other prudent and indifferent bailee. In such a case it has accordingly been said of a ship so receipted, sent to sea by the debtor, and lost, that the sheriff is at all events liable. (Phillips v. Bridge, 11 Mass. Rep. 242, 247. See also Tyler v. Ulmer, 12 id. 163, 167, and Congdon v. Cooper, 15, id. 10, 14.)
Looking at the question as betAveen the sheriff and receiptor, and laying the debtor out of view, the duty which the former has raised to himself-is enhanced, by implication of law, onede *594 gree beyond that of his own. There is no compensation in the matter.; but a gratuitous loan for' the receiptor’s accommodation. This relation of itself binds him to an extraordinary degree of diligence, and I think should raise a corresponding obligation as between the sheriff and the plaintiff. But more, it seems to me the argument of Parker, J., in Phillips v. Bridge, presents the.matter in its trae light. He says, the creditor is no party to . the receipt, nor has he any interest in the contract made with ' the receiptor, who is responsible only to the officer. The officer is supposed to have in his custody1 all the goods and chattels attached; and if any loss' happen in consequence of his bargains with the debtor, he must be the loser, for he parts with the property at his peril.
■In the case at bar the sheriff very properly proceeded upon these considerations by taking just such a contract from the receiptor as I think every officer is bound to take before he allows goods to pass out of his own care or that of his ordinary servants. The stipulation was to return the goods on demand, or pay the agreed value. Even without the‘ latter clause, here Would be more than a general bailment or a contract merely to keep safely as in Southcote’s case,- (4 Rep. 83, 4;) or to carry safely and securely a.s in Coggs v. Bernard, (2 Ld. Raym. 909.) The agreement would be to re-deliver on demand, without' qualification; in legal effect, at all events. The distinction in. Paradine v. Jane (Aleyn, 26) applies. The defendant refused to pay his stipulated rent because he was expelled from the premises by Prince Rupert, an alien, heading an army of alien enemies. The court said, if the obligation to pay had been raised by the law, he should be excused; but being express, by covenant, the law would not protect him. (See Brecknock Comp. v: Pritchard,- 6 T. R. 750.) In the last case it is said, if a loss is intended to be excepted, the agreement should be worded accordingly. In Hadley v. Clarke, (8 T. R. 259, 267,) the-party had contracted to carry goods, but was hindered by an embargo; yet the court held him liable. Lawrence J. stated the rule in Aleyn, and put the case expressly upon it. (Vid. Story On Bailm. 24,5.) In the ease at bar, the receiptor made him *595 self an insurer. The duty of the general bailee is graduated by implication of law on the nature of the bailment. But he may always tighten and in most cases relax it by express stipulation. An ordinary case is that of the factor under a del credere commission, who stipulates to guaranty the solvency of those to whom he sells the goods of his principal.
But the case before us is still stronger. If the receiptor did not deliver, he was to pay the two thousand dollars. It is impossible, I think, after all this, without indulging in a very dangerous disregard of the rule binding a party by his express stipulation, to excuse him, even if the falure had arisen from such inevitable cause as would discharge a common carrier. Can it be doubted for a moment that the sheriff’s liability is commensurate with the security he holds? The ability of the receiptor to pay is not questioned ; and if it were, the sheriff could not excuse himself for that reason. He was under no obligation to deliver over the goods, and must see at his peril, that the substituted security be available. (See the Massachusetts cases already cited; also Story On Bailm. 96, § 128.) The law looks to the remedy over. One reason assigned for the sheriff’s liability for an escape, procured even by rebels and traitors, is that he may have his remedy by action against them. (Dy. 66, b.) It is of the nature of every trust, that where the trustee parts with the fund, and takes a substituted security, he is guilty of a conversion and must answer'at all events. Beside, he here takes a security so framed as absolutely to fetch the money into his own hands. Is it to be endured that he shall hold it as a god-send for his own pocket, by telling the cestui que trust that the goods were burned? Suppose the receiptor had paid him the money immediately after the ñre. Whát difference is there in principle between the money and an absolute available security ? But it has long since been adjudged that a sheriff takes , security at his peril. Though he take a bond not collectable, he is liable, according to a case cited in Ward v. Hauchet, (1 Keb. 551,) and recognized by this court as law in Reed v: Pruyn, (7 John. 429.) See also Hoyt v. Hudson, (12 id. 207, 8.) There is difficulty enough arising from the laxity of our laws for col *596 lccting debts, without raising an interest in the sheriff to defeat the creditor after he has had the unusual good fortune to reach the goods of the debtor. In cases where the sheriff is bound to take bail, as for a party’s appearance, his obligation is measured by that of the surety. He must see that special bail is put in. A fortiori, where he has an option to retain the subject or take security for its forth coming.
On the whole, I am of opinion that a new trial should be denied.
Nelson, Ch. J.
I cannot concur in the result of the opinion just delivered. Assuming that a sheriff may take a receipt for goods levied on, which will give him a remedy even though the property be afterwards destroyed by inevitable accident, it is quite clear that no such remedy can be said to exist unless the contract of the receiptor be very special and explicit, leaving no doubt of his intention to insure against casualties. Short of this, he is regarded as an ordinary bailee for hire, and responsible only for the safe keeping of the goods upon principles applicable to that species of bailment. There are numerous cases in the books establishing this doctrine. (See Brown v. Cook, 9 Johns. Rep. 361; Dillenback v. Jerome, 7 Cowen, 294; Story On Bailm. 96 to 98, 390, 1.) A very respectable body of authority may also be found for saying that, even where the bailee has entered into a special undertaking to keep the goods safely, and delioer them when called for, he is not liable for losses arising from unavoidable calamity. (Jones On Bailm. 43 to 45; Doct. & Stud. Dial. 2, ch. 38; Story On Bailm. 24.) But at all events, without some such particular and special engagement, there is no foundation laid for the extraordinary liability mentioned.
The contract evinced by the receipt in the present case does not essentially vary from the one in Brown v. Cook, or in Dillenback v. Jerome, in both of which instances the court regarded the receiptor as an ordinary bailee. In Brown v. Cook the defendant receipted a span of horses levied on by a constable, promising to deliver them at a particular place on demand. The *597 engagement was in terms equally absolute and unconditional with that of the receiptor in the case under consideration.
The undertaking of the receiptor here is nothing more than what would be raised by implication of law upon the deposit of property for a limited period, in which case no one would claim that the bailee had incurred an obligation like the one now insisted on. Indeed, the obligation of the receiptor in the present case, if practically enforced upon the principles contended for, would exceed the rigorous severity of that imposed upon common carriers, which has never been claimed as arising out of the terms of their contract, though usually very similar to the one in question, but only out of the custom of the realm.
It appears to me we shall yield the full measure of liability to the sheriff, in. cases like the present, if we make it commensurate with his liability over to the plaintiff in the execution. This will afford the sheriff full indemnity—the sole object of taking the security—and work no injustice to the plaintiff. He has sought satisfaction of his demand by judgment and execution in due course of law, and his appropriate remedy, indeed his only one, is against the officer. When that fails, his legal remedy is exhausted. The proposition has been laid down as a general one, that in case the officer be discharged from all liability over,' his right to maintain an action against the receiptor is gone. (Story On Bailm. 95, § 126.)
It may well be questioned, I think, whether the sheriff has a right to take security by way of receipt extending'beyond the limit of his own responsibility to the plaintiff in the execution. Taking the security is an official act on the part of the sheriff, and should be confined within the scope of his official authority and obligation; and why he should be allowed to stipulate for more than an indemnity, is not easily perceived. The spirit of the .statute which declares that he shall not “ take any bond, obligation or security, by color of his office, in any other case or manner than such as are provided by law,” (2 R. S. 286, § 59,) would seem to forbid it.
*598 Bronson, J.
When the sheriff levies upon goods, he musí be diligent to keep them safely to satisfy the execution. But he is not an insurer, and is not, like a common carrier, answerable for a loss of the goods by fire. Thus far I concur in the opinion of my brother Cowen. But I cannot agree that the extent of obligation contracted by the receiptor should have any influence upon the liability of the sheriff. When the sheriff. leaves the goods with the debtor, either with or without a receipt from some third person, he assumes the risk of answering to the creditor if the property be lost through the negligence or any wrongful act of the debtor. . But I do not perceive that the taking or omitting to take a receipt, or the extent of liability' which the receiptor may contract, can have any effect- upon the rights of. the creditor. He is not a party to the receipt, nor has he any interest in it. (Phillips v. Bridge, 11 Mass. R. 247.) If a receipt be taken which,.either through defect of form or' the insolvency of the receiptor, proves to be of no value to the , -sheriff, he must still answer to the creditor for the. loss of the goods. And' on the other hand, if the sheriff may and does take a receipt which gives him a remedy beyond what, under other circumstances, would-have been the extent of his own -liability, I do not see how that can confer any right upon the creditor. He has nothing to do with any right of action which the sheriff may have acquired against a third person; and if we • assume that the sheriff might in this case.recover against the receiptor, I#am of opinion that this action cannot be maintained.
But I think the sheriff cannot take a receipt or any other com tract in relation to the property, which will give him a remedy beyond his own liability to the creditor. He may appoint a deputy or assistant to aid -in taking care of. the property, or may deliver it to a bailee to be kept until the time of sale; and he may take a contract from, the deputy, assistant or bailee, for an indemnity- in case the goods shall be lost. But he cannot go beyond that, and take an agreement for any thing more than an indemnity. That would be using his office and the process of the court for the purpose of making a profit or advantage to *599 himself beyond his legal fees. Such a security has not been authorized .by law, and, being taken by color of his office, would he void. (2 R. S. 286, § 59.) If upon the true construction of this receipt, the person who gave it has agreed for any thing more than an indemnity to the sheriff, the contract is either wholly void, or else it is bad for the excess. I do not intend to say that the contract must be-in the form of an agreement to indemnify and save harmless. The sheriff may undoubtedly take such a contract from the bailee as will give him an action although he has not himself been sued or proceeded against in any other form. But if in a suit against the bailee, the facts appear to be such that the sheriff is not answerable over to the creditor, the action cannot be maintained. And so in any view of the question, I am of opinion that the liability of the sheriff is to be determined without any reference to the terms of the receipt.
New trial granted.